SEYFARTH SHAW LLP
Heriberto Alvarez, Jr. (SBN 307048)
halvarez@seyfarth.com
Julia S. Gordon (SBN 357186)
jsgordon@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
ALASKA AIRLINES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA ROLLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC., a California Corporation; ALEXIS NOLEN, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:25-cv-09167-MCS<br><br>Honorable Judge Mark C. Scarsi<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:   August 10, 2026<br>Time:   9:00 a.m.<br>Courtroom:   7C, 7th Floor |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................6

I.     FACTUAL BACKGROUND.......................................................................6

    A.     Alaska's business operations............................................................6

        1.     Alaska prohibits discrimination, harassment, and retaliation..............6

        2.     Alaska maintains Rules of Conduct and attendance expectations.................................................................................6

        3.     CBA provisions govern Flight Attendant "Lineholder" and "Reserve" assignments....................................................................7

    B.     Alaska hired Plaintiff on May 9, 2022. ...........................................8

    C.     Plaintiff claims that she injured her knee in May 2022, and she took leave to care for her injury. ..........................................8

    D.     Plaintiff took a further leave from August 2023 to May 2024 for her knee injury. .........................................................................9

    E.     Plaintiff returned to work in June 2024 and claims that she became homeless in July 2024. ........................................................9

    F.     On July 7, 2024, Plaintiff requested intermittent leave, which The Hartford initially denied because she did not provide proper documents............................................................................9

    G.     On August 13, 2024, Plaintiff worked a "Lineholder" trip to Cabo San Lucas, Mexico and was allowed to drop the Limo from SAN to LAX........10

    H.     Plaintiff engaged in sick leave abuse on August 14, 2024, when she improperly called off work from a Reserve assignment. ...........................10

        1.     Alaska's Crew Scheduling notified Plaintiff at 3:26 p.m. of her Reserve trip to SEA. ............................................................10

        2.     Plaintiff called Crew Scheduling back at 3:33 p.m. requesting again to forgo the Limo to LAX. .........................................................11

        3.     Plaintiff improperly called off work at 3:56 p.m. after realizing that she would be unable to report to SAN on time..........................11

    I.     On August 19, 2024, The Hartford approved Plaintiff's intermittent leave request. ......................................................................12

    J.     Alaska investigated Plaintiff for sick leave abuse in August 2024..............12

i

K.    Alaska terminated Plaintiff's employment for sick leave abuse..................13

L.    Plaintiff's termination was upheld at a grievance hearing...........................13

II.    SUMMARY JUDGMENT STANDARD ................................................................14

III.    PLAINTIFF HAS VOLUNTARILY WAIVED HER TENTH, TWELFTH,
AND THIRTEENTH CAUSES OF ACTION, WHICH SHOULD ALL BE
DISMISSED ...................................................................................................14

IV.    CLAIMS AGAINST ALEXIS NOLEN SHOULD BE DISMISSED
BECAUSE PLAINTIFF FAILED TO SERVE HER TIMELY ...........................15

V.    PLAINTIFF'S FIRST, SIXTH, AND NINTH CAUSES OF ACTION FOR
UNLAWFUL DISCRIMINATION AND RETALIATION FAIL........................15

A.    Plaintiff bears the burden to prove unlawful discrimination and
retaliation................................................................................................15

B.    Alaska had a legitimate reason to terminate Plaintiff's employment. ..........16

C.    Plaintiff cannot meet her burden to show that her termination was a
pretext for unlawful discrimination..........................................................18

1.    Plaintiff was not on an approved leave when she called off
work...............................................................................................18

2.    Plaintiff was not terminated for accumulating attendance points
during her employment. ..................................................................18

D.    Plaintiff cannot meet her burden to show that her termination was a
pretext for retaliation...............................................................................19

1.    Plaintiff abused sick leave before Alaska learned that she had
engaged in protected activity. ..........................................................19

2.    Nolen was unaware on August 14, 2024 that Plaintiff suffered
from any disability or had requested intermittent leave. ....................20

VI.    PLAINTIFF'S SECOND CLAIM FOR DISABILITY HARASSMENT
FAILS ..........................................................................................................20

A.    Plaintiff bears the burden to prove that the alleged conduct was severe
and pervasive...........................................................................................20

B.    Conduct related to personnel management is not harassment. .....................21

C.    Regardless, Plaintiff cannot establish a claim for harassment......................22

VII.    PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION FOR
FAILURE TO REASONABLY ACCOMMODATE AND ENGAGE IN
THE INTERACTIVE PROCESS FAIL..............................................................22

ii

VIII.  PLAINTIFF'S SEVENTH AND EIGHTH CAUSES OF ACTION FOR DISCRIMINATION AND RETALIATION UNDER THE FMLA AND CFRA FAIL ...............................................................................................23

    A.  Plaintiff cannot prove that any attendance points Alaska issued in 2022 or 2023 were because she exercised her right to CFRA or FMLA leave ..................................................................................................24

    B.  Plaintiff was not eligible for CFRA or FMLA leaves in 2024 for absences in July or August when she called off work on August 14............24

    C.  Plaintiff cannot prove pretext because Alaska accurately assessed points and terminated her for lawful reasons. ....................................25

IX.  PLAINTIFF'S FIFTH AND ELEVENTH CAUSES OF ACTION FOR FAILURE TO PREVENT AND WRONGFUL TERMINATION FAIL...............25

X.  PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS ..............................25

XI.  CONCLUSION.................................................................................................26

DEFENDANT'S NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................ 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................ 14

*Diaz v. Eagle Produce Ltd. Partnership*,
521 F.3d 1201 (9th Cir. 2008) ................................................................................ 17

*Hason v. Med. Bd. of California*,
279 F.3d 1167 (9th Cir. 2002) ................................................................................ 15

**State Cases**

*Aquino v. Superior Ct.*,
21 Cal. App. 4th 847 (1993) .................................................................................... 25

*Arteaga v. Brink's, Inc.*,
163 Cal. App. 4th 327 (2008) ............................................................................ 17, 20

*Avila v. Cont'l Airlines, Inc.*,
165 Cal. App. 4th 1237 (2008) ............................................................................... 20

*Brundage v. Hahn*,
57 Cal. App. 4th 228 (1997) .................................................................................... 18

*Galvan v. Dameron Hosp. Ass'n*,
37 Cal. App. 5th 549 (2019) .................................................................................... 21

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) ....................................................................................... 15, 16

*Hanson v. Lucky Stores, Inc.*,
74 Cal. App. 4th 215 (1999) .................................................................................... 25

*Janken v. GM Hughes Elecs.*,
46 Cal. App. 4th 55 (1996) ...................................................................................... 21

*McRae v. Department of Corrections & Rehabilitation*,
142 Cal. App 4th 377 (2006) ................................................................................... 19

*Moore v. May Dept. Stores*,
222 Cal. App. 3d 836 (1990) ................................................................................... 17

*Moore v. Regents of Univ. of California*,
248 Cal. App. 4th 216 (2016) ................................................................................. 23

*Nazir v. United Airlines, Inc.*,
178 Cal. App. 4th 243 (2009) ................................................................................. 21

iv

*Reno v. Baird*,
  18 Cal. 4th 640 (1998) ................................................................................... 21

*Scotch v. Art Inst. of California-Orange Cty., Inc.*,
  173 Cal. App. 4th 986 (2009) ................................................................. 16, 25

*Serri v. Santa Clara Univ.*,
  226 Cal. App. 4th 830 (2014) ....................................................................... 21

*Wilson v. County of Orange*,
  169 Cal. App. 4th 1185 (2009) ............................................................... 22, 23

*Yanowitz v. L'Oreal USA, Inc.*,
  36 Cal. 4th 1028 (2005) ................................................................................ 15

**Federal Statutes**

FMLA .................................................................................................... *passim*

**State Statutes**

Civ. Code § 3294(a) ........................................................................................ 25

Civ. Code § 3294(b) ........................................................................................ 25

Labor Code § 233 ........................................................................................... 15

**Rules**

Fed. R. Civ. P. 4 ............................................................................................. 15

Fed. R. Civ. P. 41(b) ....................................................................................... 15

Fed. R. Civ. P. 56(c) ....................................................................................... 14

v

**NOTICE OF MOTION AND MOTION**

**TO THE COURT AND TO PLAINTIFF:**

**PLEASE TAKE NOTICE** that on August 10, 2026, at 9:00 a.m. in Courtroom 7C, 7th Floor, of the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, before the Honorable Mark C. Scarsi, Defendant Alaska Airlines, Inc. ("Defendant" or "Alaska") will and hereby does move the Court pursuant to Fed. R. Civ. P. 56 for summary judgment or partial summary judgment against Plaintiff Pamela Rolle ("Plaintiff"). This Motion is made on the following grounds:

1. **First Cause Of Action For Disability Discrimination Under The Fair Employment And Housing Act ("FEHA")** – Plaintiff does not have a viable cause of action because (i) Alaska terminated her on September 3, 2024 for lawful reasons due to her sick leave abuse on August 14, 2024, (ii) Plaintiff had not been approved for Family and Medical Leave Act ("FMLA") or California Family Rights Act ("CFRA") benefits when she called off work on August 14, 2024, and therefore (iii) she was not performing competently in her job on August 14, 2024 when she called off work and abused sick leave.

2. **Second Cause Of Action For Disability Harassment Under The FEHA** – Plaintiff does not have a viable cause of action because any conduct related to personnel management cannot be considered unlawful harassment and, regardless, Plaintiff has produced no evidence of any intimidation, ridicule, or insults from Alaska that center on any protected status.

3. **Third Cause Of Action For Failure to Accommodate Disability Under The FEHA** – Plaintiff does not have a viable cause of action because Alaska provided Plaintiff with reasonable accommodations for her knee injury in 2022, 2023, and 2024 and for her mental health condition in 2024.

4. **Fourth Cause Of Action For Failure To Engage In The Interactive Process Under The FEHA** – Plaintiff does not have a viable cause of action because

1

Alaska engaged in a good faith interactive process with Plaintiff in 2022, 2023, and 2024 for Plaintiff's knee injury and in 2024 for her mental health condition.

**5.      Fifth Cause Of Action For Failure To Prevent, Correct, and Remedy Discrimination and Harassment** – Plaintiff does not have a viable cause of action because this claim rises and falls with the underlying FEHA claims, and Plaintiff cannot prove that she suffered any discrimination, retaliation, harassment, or any other unlawful conduct.

**6.      Sixth Cause Of Action For Retaliation For Engaging In Protected Activity Under The FEHA –** Plaintiff does not have a viable cause of action because (i) Alaska terminated her on September 3, 2024 for lawful reasons due to her sick leave abuse on August 14, 2024, (ii) Plaintiff abused sick leave on August 14, 2024 before Alaska learned that Plaintiff had engaged in protected activity, (iii) the manager who recommended for Plaintiff's termination was unaware on August 14, 2024 that Plaintiff had requested an intermittent leave of absence through The Hartford.

**7.      Seventh Cause Of Action For Family and Medical Leave Discrimination and Retaliation** – Plaintiff does not have a viable cause of action because (i) Plaintiff cannot prove that any attendance points Alaska issued in 2022 or 2023 were because she exercised her right to CFRA or FMLA leave, (ii) she was not eligible for CFRA or FMLA benefits when she engaged in sick leave abuse because The Hartford had not yet approved that leave of absence, and (iii) Plaintiff was terminated for lawful business reasons due to her abuse of sick leave in violation of Alaska policies.

**8.      Eighth Cause Of Action For Retaliation In Violation of California Family Rights Act** – Plaintiff does not have a viable cause of action because (i) Plaintiff cannot prove that any attendance points Alaska issued in 2022 or 2023 were because she exercised her right to CFRA or FMLA leave, (ii) she was not eligible for CFRA or FMLA benefits when she engaged in sick leave abuse because The Hartford had not yet approved that leave of absence, and (iii) Plaintiff was terminated for lawful business reasons due to her abuse of sick leave in violation of Alaska policies.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

9. **Ninth Cause Of Action For Retaliation for Complaints of Discrimination and Harassment –** Plaintiff does not have a viable cause of action because (i) Alaska terminated her on September 3, 2024 for lawful reasons due to her sick leave abuse on August 14, 2024 and (ii) Plaintiff has no evidence to prove that she was terminated because she complained about any alleged discrimination or harassment.

10. **Tenth Cause Of Action For Retaliation in Violation of Labor Code § 233** – On June 29, 2026, Alaska met and conferred with Plaintiff via telephone to discuss this Motion. During that call, Plaintiff confirmed that she now voluntarily waives her Tenth cause of action for Retaliation in Violation of Labor Code § 233. Thus, because Plaintiff has voluntarily waived this cause of action and therefore abandoned it, Alaska is entitled to summary judgment on this claim.

11. **Eleventh Cause Of Action For Wrongful Termination** – Plaintiff does not have a viable cause of action because this claim rises and falls with the underlying claims, and Plaintiff cannot prove that she was terminated for any unlawful reason.

12. **Twelfth Cause Of Action For Intentional Infliction of Emotional Distress** – On June 29, 2026, Alaska met and conferred with Plaintiff via telephone to discuss this Motion. During that call, Plaintiff confirmed that she now voluntarily waives her Twelfth cause of action for Intentional Infliction of Emotional Distress. Thus, because Plaintiff has voluntarily waived this cause of action and therefore abandoned it, Alaska is entitled to summary judgment on this claim.

13. **Thirteenth Cause Of Action For Negligent Infliction of Emotional Distress** – On June 29, 2026, Alaska met and conferred with Plaintiff via telephone to discuss this Motion. During that call, Plaintiff confirmed that she now voluntarily waives her Thirteenth cause of action for Negligent Infliction of Emotional Distress. Thus, because Plaintiff has voluntarily waived this cause of action and therefore abandoned it, Alaska is entitled to summary judgment on this claim.

14. **Request For Punitive Damages** – Plaintiff is not entitled to recover punitive damages because there is no clear and convincing evidence of fraud, oppression,

or malice. Additionally, the only alleged bad actors Plaintiff identifies are not "managing agents" under California Civil Code § 3294(b).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declarations of Heriberto Alvarez Jr., Alexis Nolen, and Hillary Dirks, all pleadings and papers on file with the Court in this action, any such information or evidence that may be judicially noticed, and any such further information or argument that may be presented at or before the hearing on this Motion.

**Local Rule 7-3 Certification.** Pursuant to the Court's Local Rule 7-3, Defendant certifies that on June 29, 2026 it met and conferred with Plaintiff via telephone to advise that it would be filing a motion for summary judgment on all 13 causes of action that Plaintiff raised in her Complaint and discuss the grounds on which the Motion would be made. (Declaration of Heriberto Alvarez, Jr. ("Alvarez Decl.") ¶ 7.)

During the call, Defendant asked Plaintiff whether she sought to continue prosecuting all 13 causes of action or if she would abandon any claims before Defendant filed its Motion. (*Id.*) Plaintiff advised during the call that she will voluntarily waive the following three causes of action: Tenth cause of action for Retaliation in Violation of Labor Code § 233, Twelfth cause of action for Intentional Infliction of Emotional Distress, and Thirteenth cause of action for Negligent Infliction of Emotional Distress. (*Id.* at ¶ 8.) Plaintiff indicated that she sought to continue prosecuting the other ten causes of action set forth in her Complaint. (*Id.*)

Therefore, as set forth in its Notice of Motion above, Defendant now files its Motion on the ten causes of action that Plaintiff intends to continue prosecuting and on her claim for punitive damages.

///
///
///
///
///

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

DATED:  July 6, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: _Heriberto Sts2._____

Heriberto Alvarez, Jr.
Julia S. Gordon

Attorneys for Defendant
ALASKA AIRLINES, INC.

5

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Alaska Airlines, Inc. ("Alaska" or "Defendant") hereby submits its Motion for Summary Judgment or Partial Summary Judgment.

## I.   FACTUAL BACKGROUND

### A.   Alaska's business operations.

Alaska is an air carrier based in SeaTac, Washington. (UF 1.) Alaska Flight Attendants, like Plaintiff Pamela Rolle ("Plaintiff"), are represented by a union: the Association of Flight Attendants – CWA ("AFA"). (UF 2.) Plaintiff's employment was governed in part by a Joint Collective Bargaining Agreement ("CBA"). (*Id.*)

#### 1.   Alaska prohibits discrimination, harassment, and retaliation.

Alaska maintains written policies, including those that prohibit discrimination, harassment, and retaliation based on legally protected characteristics, and a disability accommodation policy. (UF 3, 4, 7.) The policies require employees to promptly report any harassment or discrimination and expressly prohibit retaliation against employees who make such reports. (UF 5-6.)

Alaska's Employee Benefits Handbook for Flight Attendants includes a Leaves of Absence/Workers' Compensation/Disability Accommodations policy that provides for employee leaves, including for their own serious health condition. (UF 8.)

#### 2.   Alaska maintains Rules of Conduct and attendance expectations.

Alaska's Rules of Conduct require employees to report to work as scheduled and report absences in accordance with relevant guidelines. (UF 9.) The Rules of Conduct further prohibit dishonesty, falsification of records, misrepresentation of facts or time records, and fraudulent use of benefits or sick leave. (UF 10.) Violations may result in discipline up to and including discharge. (UF 11.)

Further, Alaska's Flight Attendant Manual expressly prohibits falsification of records, misrepresentation of facts, theft, fraudulent use of pay or benefits, and provides that such conduct constitutes grounds for dismissal. (UF 12.)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

Additionally, the CBA contains a points-based attendance policy. (UF 13.) Under that system, progressive discipline corresponds to the number of attendance points a Flight Attendant accumulates. (UF 14.) The policy is a "no fault system, and points do accrue for legitimate attendance occurrences," but the policy also provides mechanisms for reducing or removing of points. (UF 15.)

The CBA specifically prohibits sick leave abuse, and violators are subject to discharge. (UF 16.)

### 3. CBA provisions govern Flight Attendant "Lineholder" and "Reserve" assignments.

Under the CBA, Flight Attendants fall into two primary categories: "Lineholders" and "Reserves." (UF 17.) Each category is subject to different obligations regarding availability, assignments, and "Limos." (UF 18.) "Limos" are the transportation that a Flight Attendant takes when being transported by ground to or from a scheduled assignment away from their assigned domicile. (UF 19.)[1]

"Reserves" are assigned "Reserve Availability Periods" during which they must remain contactable and report within two hours to their "domicile" for an assignment (a domicile might not be the departing airport for that particular assignment). (UF 21.) Reserves are required to begin and end assignments at their domicile and do not have discretion to drop the Limo transportation to their scheduled assignment. (UF 22.) Specifically, a "PM Reserve" assignment requires a Flight Attendant to be available between 10:00 a.m. and midnight local domicile time. (UF 23.)

In contrast, "Lineholders" are not required to start and end assignments at their domicile if their assignment begins away from domicile. (UF 24.) Pursuant to the CBA,

---

[1] The term Limo may be used interchangeably with the term "Surface Deadhead." (UF 19.) "Deadhead" is transport by either air or ground from their domicile to position the Flight Attendant where their working flight assignment begins or to return them to their domicile after their working flights have ended. A "Surface Deadhead" is a term used for a Deadhead using ground transportation. (UF 20.)

7

Lineholders are permitted to request to decline Limos and, if approved, join a sequence on the first working leg of a trip (such as the departing airport). (UF 25.)

### B. Alaska hired Plaintiff on May 9, 2022.

Alaska hired Plaintiff on May 9, 2022 as a Flight Attendant. (UF 26.) Alexis Nolen ("Nolen") became Plaintiff's performance supervisor in July 2023. (UF 27.) Plaintiff was initially based in Seattle but transferred to San Diego on July 1, 2023. (UF 28.)

Thus, in July 2023, San Diego and its airport (identified by the code "SAN") became Plaintiff's domicile for purposes of her employment with Alaska. (UF 29.)

### C. Plaintiff claims that she injured her knee in May 2022, and she took leave to care for her injury.

Plaintiff claims that on May 26, 2022, she injured her knee at work. (UF 30.) Plaintiff initially did not report the incident, but she eventually reported it in August 2022. (UF 31, 32.)

Plaintiff was off work from August 20 to August 24, 2022 to care for her knee. (UF 33.) After a brief stay, including because of Plaintiff's relocation from Florida to Washington and Alaska's transition to third-party administrator, Sedgwick, Plaintiff's workers' compensation claim was initiated on November 1, 2022. (UF 34.)

Thus, because Plaintiff had no approved leave benefits in place at that time, Alaska correctly coded her August 2022 absences as "sick leave." (UF 35.) Pursuant to the CBA's "no fault" provision, Plaintiff was assessed .5 attendance points for each day she was off work, for a total of 2.5 points. (UF 36.) While these points were initially assessed, Plaintiff used a Point Reduction Form to remove the points from her attendance record shortly after they were issued, and before the end of her next trip sequence (as required by the CBA). (UF 37, 38.) Thus, Plaintiff was not disciplined or counseled at any time for accruing those attendance points. (UF 39.)

Moreover, Plaintiff's workers' compensation claim was not immediately approved because she failed to submit required medical and billing records to Sedgwick. (UF 40.) After Sedgwick received proper documentation, it approved Plaintiff's workers'

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

compensation claim on July 17, 2023. (UF 41.) On October 5, 2023, Plaintiff received her workers' compensation benefits for absences in August 2022, but she was not entitled to receive any sick pay from Alaska for those absences because she was on her probationary period during that time. (UF 42, 43.)

**D.    Plaintiff took a further leave from August 2023 to May 2024 for her knee injury.**

Plaintiff claims that her knee pain returned in August 2023. (UF 44.) That month, she took a leave of absence that was extended multiple times through May 2024. (UF 45.) Plaintiff attended at least 10 separate medical appointments between August 2023 and April 2024 to care for her knee and provided these medical records to The Hartford, Alaska's third-party leave administrator, who approved each leave extension. (UF 45-62.)

Plaintiff was approved for and received workers' compensation benefits from September 8, 2023 through May 29, 2024 while she was off work. (UF 63.) Plaintiff was given a full work release in May 2024, so her workers' compensation claim was closed on June 7, 2024. (UF 64, 65.)

**E.    Plaintiff returned to work in June 2024 and claims that she became homeless in July 2024.**

Plaintiff returned to work in June 2024 after completing requalification training mandated by the Federal Aviation Administration. (UF 66.)

Plaintiff claims that on or about July 8, 2024, she became homeless and began living with a friend in Long Beach, California. (UF 67.)

**F.    On July 7, 2024, Plaintiff requested intermittent leave, which The Hartford initially denied because she did not provide proper documents.**

On July 7, 2024, Plaintiff submitted a request to The Hartford for intermittent leave for her own health condition, pursuant to the FMLA and CFRA. (UF 68.) On July 9, 2024, The Hartford advised that before a decision could be made on her leave request, Plaintiff's doctor needed to submit a completed medical certification form. (UF 69.)

Plaintiff's doctor did not submit the certification form until July 17, 2024. (UF 70.)

9

However, the form was incomplete, missing the second of three pages, and incorrect, listing Plaintiff's employer as "Allegiant Air." (UF 71.) On July 18, 2024, The Hartford requested additional information from Plaintiff before it could render a decision on her leave request. (UF 72.) And on July 22, 2024, The Hartford denied Plaintiff's leave request because it received incomplete documentation. (UF 73).

**G.     On August 13, 2024, Plaintiff worked a "Lineholder" trip to Cabo San Lucas, Mexico and was allowed to drop the Limo from SAN to LAX.**

On August 13, 2024, Plaintiff worked a Lineholder trip from Los Angeles ("LAX") to Cabo San Lucas, Mexico, which began at Plaintiff's base in SAN with a Surface Deadhead/Limo to LAX. (UF 74, 75.)

The day before her trip, Plaintiff called Alaska's Crew Scheduling department, advised that she was already in Long Beach, and requested to forgo the Limo from SAN to LAX and instead report directly to LAX. (UF 76.) Because Plaintiff was on a Lineholder assignment, CBA provisions permitted Plaintiff to drop the Limo from SAN with approval and report directly to LAX. (UF 77.)

**H.     Plaintiff engaged in sick leave abuse on August 14, 2024, when she improperly called off work from a Reserve assignment.**

On July 22, 2024, Plaintiff picked up a "PM Reserve" block for August 14, 2024, which ultimately resulted in a two-day trip from LAX to SEA. (UF 78, 79.) Plaintiff was thus required to (i) remain within two hours of her SAN base between 10:00 a.m. and midnight on August 14, 2024, and (ii) begin and end any trip assigned from SAN. (UF 80.)

**1.     Alaska's Crew Scheduling notified Plaintiff at 3:26 p.m. of her Reserve trip to SEA.**

At 3:26 p.m. on August 14, 2024, Plaintiff received a call from Alaska's Crew Scheduling department for a Reserve trip assignment beginning with a Surface Deadhead from SAN to LAX and then a working flight from LAX to SEA, where she needed to report to SAN by 5:30 p.m. that day and take a Limo into LAX. (UF 81-83.)

10

Plaintiff told the Scheduler that she was "already in Long Beach" and did not need to drive to SAN but could instead report directly to LAX. (UF 84.) The Scheduler reminded Plaintiff that she was on a Reserve assignment and Alaska was "unable to release Reserves from the ground transportation," which meant that Plaintiff had to first report to SAN and then take a Limo to LAX. (UF 85.)

### 2. Plaintiff called Crew Scheduling back at 3:33 p.m. requesting again to forgo the Limo to LAX.

After receiving the Reserve assignment, Plaintiff called Crew Scheduling back at 3:33 p.m. and again disagreed about the need to first report to SAN. (UF 86-88.) The Scheduler again reminded Plaintiff that because she was on a Reserve assignment, Alaska could not "release Limos for Reserves." (UF 89.)

During the call, Plaintiff also admitted that she was ***unable*** to report to her SAN base within the two hours required by the CBA, advising the Scheduler that it would take her "two hours and 10 minutes to get there" because she was in Long Beach. (UF 90.)

Thus, Plaintiff admitted that she would be arriving to SAN after the 5:30 p.m. reporting time and would be tardy to work.

### 3. Plaintiff improperly called off work at 3:56 p.m. after realizing that she would be unable to report to SAN on time.

At 3:56 p.m., Plaintiff called Crew Scheduling to "call out" from her Reserve trip. (UF 91.) Plaintiff informed the Scheduler that she was calling out for "FMLA," but she provided no additional information or that she was suffering from any medical condition at that time. (UF 92, 93.) During the call, the Scheduler reminded Plaintiff that she was calling out with "less than two hours' notice." (UF 94.) Because of this late call out, Plaintiff accrued 2.5 attendance points for her absence, pursuant to CBA provisions. (UF 95.)

In deposition, Plaintiff admitted that she was required to remain close to her base on August 14, 2024. (UF 80.) Further, she did not believe that she would be assigned a trip because a two-hour callout is a "very rare" occurrence. (UF 96.) Thus, Plaintiff

11

admitted that she voluntarily remained far from SAN and did not think that she would be selected to work that day. (*Id.*)

While Plaintiff called out for "FMLA," The Hartford had not yet approved Plaintiff's intermittent leave request on August 14, 2024. (UF 97.) Therefore, Plaintiff had no FMLA or CFRA leave available that day to cover her absences. (*Id.*)

**I.      On August 19, 2024, The Hartford approved Plaintiff's intermittent leave request.**

Plaintiff's intermittent leave request was pending through early and mid August 2024 because of her incomplete and erroneous document submissions. (UF 68-73.) Nonetheless, on August 16, 2024, Alaska directed The Hartford to accept Plaintiff's submitted paperwork and approve dates for leave if supported by proper certification. (UF 98.)

Thus, on August 19, 2024, Plaintiff's request for intermittent FMLA and CFRA leave was approved retroactively beginning July 8, 2024 through July 7, 2025. (UF 99.)[2]

**J.      Alaska investigated Plaintiff for sick leave abuse in August 2024.**

On August 20, 2024, Plaintiff met with Nolen and her union representative, Brice McGee ("McGee") to discuss her call out on August 14, 2024. (UF 105.) At the meeting, Nolen asked Plaintiff to explain why she called off work that day. (*Id.*)

Plaintiff first admitted that when she called off work, she did not understand the difference between Reserve and Lineholder requirements. (UF 106.) She then admitted to her erroneous belief that she would be allowed to drop the Limo from SAN and report

---

[2] Before Alaska (including Nolen) learned that The Hartford had approved her leave request, Plaintiff was counseled for accumulating 5.0 attendance points for absences dated between July 8 and August 14, 2024. (UF 100-101, 129.) Alaska removed those attendance points (for absences that she reported timely to The Hartford) once it learned that Plaintiff had approved leave that began July 8, 2024. (UF 102-103.) Moreover, any previous attendance points that Plaintiff accumulated did not trigger any counseling from Alaska. (UF 39, 104.) Specifically, for the 2.5 points for absences dated between August 20 and August 24, 2022, Plaintiff used a Point Reduction Form to remove those points from her attendance record shortly after they were issued. (UF 37, 38.)

12

directly to LAX (as she had done the previous day on her Lineholder trip to Cabo San Lucas). (UF 107.)

Further, Plaintiff said that she had been driving on the freeway for about 10 minutes before she pulled over to call off work. (UF 108.) Thus, Plaintiff admitted that she called off work only *after* realizing that she would be unable to report to SAN by her 5:30 p.m. start time.

Plaintiff also claims that she first began feeling ill "on [her] way into work," and not before the Scheduler called about her Reserve assignment to SEA. (UF 109.) Indeed, Plaintiff admitted that she had no medical symptoms before the Scheduler called her on August 14, 2024. (UF 110.)

### K.    Alaska terminated Plaintiff's employment for sick leave abuse.

On September 3, 2024, Alaska terminated Plaintiff's employment for "sick leave abuse." (UF 111.) Given the timing of Plaintiff's call-out on August 14, 2024, and its occurrence directly after she twice requested to report directly to LAX, Alaska determined that Plaintiff called out to avoid reporting to SAN for her Reserve assignment, and not because she was actually ill. (UF 112.)

Indeed, Alaska concluded that Plaintiff had made multiple attempts to avoid driving from Long Beach to SAN, and when those attempts were denied, Plaintiff called out of her assignment. (UF 113.) Alaska further concluded that Plaintiff should have called out of her entire assignment if she was unwell, rather than wait until realizing that she would be unable reach SAN by her 5:30 p.m. start time. (UF 114.)

Plaintiff's improper actions violated multiple Alaska policies and CBA provisions, including those that prohibit dishonesty and sick leave abuse. (UF 115-116.)

### L.    Plaintiff's termination was upheld at a grievance hearing.

On September 27, 2024, Plaintiff appealed her termination at a grievance hearing held by Alaska that she attended with McGee. (UF 117.)

Plaintiff again admitted that she wanted to report directly to LAX and forgo the Limo from SAN. (UF 118.) Plaintiff also claimed that she began experiencing anxiety

13

symptoms *only after* she entered her destination into GPS and learned that she would be unable to reach SAN by her 5:30 p.m. start time because she was away in Long Beach. (*Id.*) Plaintiff also admitted that after she called off work, she was able to drive back to her home in Long Beach. (UF 119.)

After considering the documents and arguments raised at the hearing, Alaska's Senior Program Manager of Labor Relations, Mike Link, determined that Plaintiff's termination was appropriate. On October 10, 2024, he denied Plaintiff's grievance and affirmed her termination. (UF 120.)

Further, on January 7, 2025, the AFA withdrew Plaintiff's termination grievance, which ended the appeal process. (UF 121.)

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 247-48.

Where the nonmoving party has the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 323. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## III. PLAINTIFF HAS VOLUNTARILY WAIVED HER TENTH, TWELFTH, AND THIRTEENTH CAUSES OF ACTION, WHICH SHOULD ALL BE DISMISSED

On June 29, 2026, Alaska met and conferred with Plaintiff via telephone to discuss this Motion for Summary Judgment. (UF 153.) During that call, Plaintiff confirmed that

14

she now voluntarily waives the following three causes of action: Tenth cause of action for Retaliation in Violation of Labor Code § 233, Twelfth cause of action for Intentional Infliction of Emotional Distress, and Thirteenth cause of action for Negligent Infliction of Emotional Distress. (UF 154.)

Thus, because Plaintiff has voluntarily waived those three causes of action and therefore abandoned them, Alaska is entitled to summary judgment on these claims.

## IV. CLAIMS AGAINST ALEXIS NOLEN SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO SERVE HER TIMELY

Claims against Nolen must be dismissed because Plaintiff never served her with the summons or complaint. The federal rules are clear: a defendant must be served within 90 days after a notice of removal is filed in federal court. Fed. R. Civ. P. 4.

Plaintiff filed her complaint on July 31, 2025, and Alaska removed this case timely on September 25, 2025. (UF 159.) Thus, Plaintiff should have served Nolen, at the latest, by December 24, 2025. To this day, over six months after that deadline, Plaintiff has not served Nolen with the summons or complaint. (UF 160.)

Plaintiff has not shown good cause for her delay in serving Nolen or explained her failure to do so. Thus, Plaintiff's claims against Nolen should be dismissed with prejudice because of a "failure to prosecute" those claims. Fed. R. Civ. P. 41(b); *Hason v. Med. Bd. of California*, 279 F.3d 1167, 1174 (9th Cir. 2002) (affirming dismissal for failure to prosecute "claims against the individual defendants in their personal capacities.").

## V. PLAINTIFF'S FIRST, SIXTH, AND NINTH CAUSES OF ACTION FOR UNLAWFUL DISCRIMINATION AND RETALIATION FAIL

### A. Plaintiff bears the burden to prove unlawful discrimination and retaliation.

California resolves claims of unlawful discrimination and retaliation under the FEHA and its "whistleblower statutes" by applying a three-part burden shifting framework. *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028 (2005); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000).

15

Under this framework, an employee must initially establish a *prima facie* case for the alleged unlawful conduct. A *prima facie* case for unlawful discrimination requires an employee to show that: (1) she was in a protected group; (2) she was performing competently in her job; (3) she suffered an adverse employment action; and (4) there are circumstances suggesting a discriminatory motive. *Guz*, 24 Cal. 4th at 355.

A *prima facie* case for unlawful retaliation requires an employee to show that: "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Scotch v. Art Inst. of California-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 1020 (2009).

An employer may then articulate a legitimate, nondiscriminatory/non-retaliatory reason for its actions. *Guz*, 24 Cal. 4th at 356. At the final stage, a plaintiff must show that the employer's legitimate reason was actually a pretext for unlawful discrimination or retaliation. *Id.* at 354-358. To meet this burden, a plaintiff must do more than "simply show that the employer's decision was wrong or mistaken," because a legitimate reason for discrimination may be "foolish or trivial or baseless" or "wrong or mistaken," so long as there is no discriminatory motive. *Id*. at 358.

**B.    Alaska had a legitimate reason to terminate Plaintiff's employment.**

Defendant terminated Plaintiff for legitimate reasons: she engaged in sick leave abuse on August 14, 2024 when she called off work for a scheduled Reserve assignment. (UF 111-116.)

That day, Plaintiff was required to report to SAN by 5:30 p.m. (UF 82.) Plaintiff refused, disagreed with Alaska's Crew Scheduler, and sought to be released from the Limo to LAX because "she was already in Long Beach." (UF 84.) Alaska's Crew Schedulers reminded Plaintiff multiple times that she had to report to SAN, and that Reserves could not be released from the Limo. (UF 85, 88, 89.)

Plaintiff then realized that she would be unable to report to SAN by 5:30 p.m. (UF 90.) Indeed, she decided to remain far from her base, in violation of Reserve-assignment

16

rules, which required her to report within two hours of a call-out. (UF 21, 96.) Instead of admitting that she was outside the reporting window, Plaintiff called off work and unilaterally categorized her call out as "FMLA," without actually having any approved leave benefits in place. (UF 92, 94, 97.)

Alaska determined that Plaintiff called out sick to avoid reporting for her Reserve assignment, and not because she was actually ill. (UF 111-116.) Thus, Alaska terminated Plaintiff lawfully on September 3, 2024 for violating Alaska's policies. (*Id.*); *see, e.g.*, *Moore v. May Dept. Stores*, 222 Cal. App. 3d 836, 838-839 (1990) (affirming summary judgment for employer who terminated the plaintiff for violation of a company policies).

Plaintiff may question the wisdom of Alaska's decision, but FEHA does not "take away an employer's right to interpret its own rules as it chooses, and to make determinations as it sees fit under those rules." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008) ("employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason"). Accordingly, even if she believes that Alaska's decision to terminate her employment was based on a "bad reason" or "erroneous facts," Plaintiff's claim fails because she has produced no evidence to establish the fourth element of her claim—that Alaska terminated her for a "discriminatory reason."[3]

---

[3] Plaintiff was also not performing competently in her job because she violated company policies when she called off work on August 14, 2024, which led to her termination. (UF 111-116.) *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1208 (9th Cir. 2008) (no reasonable juror could find employee's performance was satisfactory where employee violated employer's policy). She also violated company policies on August 3 and August 5, 2023, when she arrived into her SAN base after her 10:00 a.m. "reserve availability period." (UF 131, 132.) Plaintiff's violations did not trigger disciplinary actions because they were addressed after the allotted timeframe, but Plaintiff's second violation would have resulted in a 14-day suspension. (UF 133.) Thus, Plaintiff also cannot establish the second element of her unlawful discrimination claim.

17

**C.** **Plaintiff cannot meet her burden to show that her termination was a pretext for unlawful discrimination.[4]**

**1.** **Plaintiff was not on an approved leave when she called off work.**

Alaska had no notice that Plaintiff suffered from a disability on August 14, 2024 because she had not been approved for any FMLA or CFRA benefits when she called off work that day. (UF 92, 93, 97.)

While Plaintiff initiated a request with The Hartford for intermittent leave on July 7, 2024 (UF 68), her request was not approved until August 19, 2024. (UF 99.) Additionally, Plaintiff admitted to requesting from The Hartford FMLA leave for the August 14, 2024 absence *after* she called off work that day and not before the start of her assignment. (UF 122.) Plaintiff has produced no evidence that Alaska knew that day that she suffered from any disability, particularly because she had communications about her leave only with The Hartford.

Under this undisputed timeline, Plaintiff cannot create a triable issue of pretext for disability-based discrimination because Alaska had no knowledge of any disability. *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236-37 (1997) (affirming summary judgment; an "adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer.").

**2.** **Plaintiff was not terminated for accumulating attendance points during her employment.**

Any claim that Plaintiff was terminated for accumulating attendance points during her employment similarly fails. Alaska's Notice of Discharge indicates that she was terminated because she called "out sick to avoid reporting to your SAN base for your reserve assignment" on August 14, 2024. (UF 111, 112.) There is no evidence that Alaska terminated Plaintiff for accumulating attendance points, including for absences in August

---

[4] While alleged in passing and without detail in ¶ 16 of her Complaint, but not formally raised as a cause of action in that pleading, Plaintiff admits that she has no race-based claim against Nolen or evidence of race discrimination by Alaska. (UF 123.)

2022 to care for knee injury (which Alaska removed from her record in 2022 after Plaintiff used a Point Reduction Form to remove those points). (UF 37, 38.)

### D.    Plaintiff cannot meet her burden to show that her termination was a pretext for retaliation.

#### 1.    Plaintiff abused sick leave before Alaska learned that she had engaged in protected activity.

Plaintiff claims that Alaska "willfully retaliated against her for exercising her legally protected rights under FMLA/CFRA," and after she "reported … events of discrimination and harassment against her." (Compl. ¶¶ 35, 102.) Not so.

First, Plaintiff admitted that she did not inform any manager at Alaska about her request to The Hartford for intermittent leave. (UF 124.) Further, Plaintiff did not inform Alaska's Crew Schedulers on August 14, 2024 during any of the three calls that she was suffering from any medical symptoms, including anxiety and panic attacks. (UF 93.) Moreover, on August 14, 2024, The Hartford had not yet approved Plaintiff's leave request. (UF 97, 99.) Thus, Plaintiff cannot prove that her termination was a pretext for retaliation because Alaska's decision to terminate was based solely on Plaintiff's sick leave abuse before it had knowledge that Plaintiff had requested any leave. Accordingly, any argument that the proximity between her leave request and termination fails. *See McRae v. Department of Corrections & Rehabilitation*, 142 Cal. App 4th 377, 388 (2006) ("temporal proximity … does not, without more" establish pretext; proximity satisfies only the *prima facie* case and can be rebutted with a legitimate reason for termination).

Plaintiff also has produced no evidence that she complained about any discrimination or harassment against her. Plaintiff's Complaint is devoid of any details about these alleged complaints, and her deposition testimony similarly identifies no such complaints. That Plaintiff complained about Alaska's investigation into her sudden call out, *after* August 14, 2024, cannot impute liability on Alaska because the decision to terminate was based solely on her sick leave abuse that day, and for no other reason. (UF 111-120.) Thus, Plaintiff will be unable to prove pretext.

19

**2.      Nolen was unaware on August 14, 2024 that Plaintiff suffered from any disability or had requested intermittent leave.**

Here, Nolen was the decisionmaker who investigated Plaintiff's sick leave abuse and issued the termination on September 3, 2024. (UF 105, 111-116.)

But Nolen was unaware on August 14, 2024 that Plaintiff suffered from any disability (including anxiety or Post Traumatic Stress Disorder) or had requested intermittent leave from The Hartford. (UF 125-127.)[5] Thus, Plaintiff cannot prove that Nolen's decision to terminate her employment was pretext for any retaliation or discrimination. *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1250 (2008) (affirming summary judgment; Plaintiff "submitted no evidence" that any person "actually related [plaintiff's medical condition] to … anyone else involved in the decision to discharge plaintiff.")

But even if the Court finds that Nolen knew about Plaintiff's intermittent-leave request before August 14, 2024, Plaintiff cannot shield herself from termination simply by engaging in protected work activity. *Arteaga*, 163 Cal. App. 4th at 354 ("Employers are sometimes forced to remove employees who are performing poorly;" termination is not unlawful "simply because the employee engaged in a protected work activity."). Indeed, an employee "fearing that [her] job is on the line, may not raise an old wound as a preemptive strike to escape appropriate discipline or discharge." *Id.* Here, Alaska terminated Plaintiff after she engaged in sick leave abuse and called off work on August 14, 2024 after realizing she would be late to her Reserve assignment. She should not be allowed to raise a prior leave request as a way to escape appropriate discipline here.

## VI.    PLAINTIFF'S SECOND CLAIM FOR DISABILITY HARASSMENT FAILS

### A.      Plaintiff bears the burden to prove that the alleged conduct was severe and pervasive.

To state a claim for hostile work environment harassment, Plaintiff must prove that "(1) [she] is a member of a protected class; (2) [she] was subjected to unwelcome

---

[5] Also, during the August 20, 2024 meeting with Plaintiff and Brice McGee, Plaintiff first told Nolen that she was homeless on August 14, 2024. (UF 128.)

20

harassment; (3) the harassment was based on [her] protected status; [and] (4) the harassment unreasonably interfered with [her] work performance by creating an intimidating, hostile, or offensive work environment." *Galvan v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 549, 563, (2019).

The law prohibiting harassment is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 263 (2009).

**B.      Conduct related to personnel management is not harassment.**

Plaintiff's harassment claim fails to the extent it is centered on Alaska's decision to terminate her employment. Indeed, "harassment is distinguishable from discrimination under the FEHA." *Serri v. Santa Clara Univ.*, 226 Cal. App. 4th 830, 869 (2014). "Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998). Instead, harassment "refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Serri*, 226 Cal. App. 4th at 869. Critically, "commonly necessary personnel management actions, such as hiring and firing … do not come within the meaning of harassment." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64 (1996).

Here, Alaska investigated and terminated Plaintiff for her abuse of sick leave on August 14, 2024. (UF 105-120.) These actions are *not* "harassing conduct" under California law—they are personnel management decisions made because Plaintiff violated company policies. Thus, to the extent that Plaintiff's harassment claim centers on her termination, summary judgment must be granted as to this claim. *Id.* (holding that any decision to terminate the plaintiffs does not "legally constitute harassment").

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

**C.      Regardless, Plaintiff cannot establish a claim for harassment.**

Plaintiff's Complaint alleges that "Defendants subjected Plaintiff to systematic and unlawful discrimination, harassment, and retaliation based on her disability, race, and age." (Compl. ¶ 16.)[6]

Plaintiff has produced no evidence of any intimidation, ridicule, or insults from Alaska that center on any protected status. She also has no evidence that any intimidation, ridicule, or insults interfered within her work performance or created an intimidating work environment. Thus, Plaintiff cannot meet the second, third, and fourth elements of a claim for harassment. Because Plaintiff cannot meet those elements, she also cannot establish the "severe" or "pervasive" elements required to prove her claim.

## VII.   PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION FOR FAILURE TO REASONABLY ACCOMMODATE AND ENGAGE IN THE INTERACTIVE PROCESS FAIL

Plaintiff's Complaint alleges without any evidence that Alaska "failed to provide [her] with a reasonable accommodation" for an unidentified "condition that substantially limits [Plaintiff's] major life activities." (Compl. ¶¶ 55-56.)

However, the record demonstrates that Alaska engaged in the interactive process and reasonably accommodated Plaintiff during her employment. First, Plaintiff took a leave of absence to care for her knee in August 2023, which was extended over nine months through May 2024. (UF 44-64.) Plaintiff attended at least 10 separate medical appointments during that time and provided medical documentation to The Hartford, who approved each request for continued leave. (*Id.*) Alaska protected Plaintiff's employment until she returned to work in June 2024. (UF 66.) Thus, Alaska cannot be held liable for failing to engage in the interactive process when an employee, like Plaintiff, received an immediate reasonable accommodation. *Wilson v. County of Orange*, 169 Cal. App. 4th

---

[6] It seems that this Paragraph was copied from another pleading. Plaintiff raises no age-based claims, and Plaintiff has no race-based claim against Nolen or evidence of race discrimination by Alaska. (UF 123.)

1185, 1195 (2009) (affirming judgment on jury verdict; holding that after the defendant engaged in the interactive process, the plaintiff "got exactly what she wanted").

Further, Alaska reasonably accommodated Plaintiff in 2024. On July 7, 2024, Plaintiff requested intermittent leave for her own health condition, pursuant to the FMLA and CFRA. (UF 68.) After initially providing erroneous and incomplete documents, The Hartford did not immediately deny Plaintiff's leave request. Instead, The Hartford maintained an open dialogue with Plaintiff, advising her of the improper documentation received and the documents it needed to render a decision. (UF 69-73.)

Further, in August 2024, while Plaintiff's leave request was pending, Alaska continued an open dialogue and directed The Hartford to approve Plaintiff's leave request if supported by proper certification. (UF 98.) On August 19, 2024, The Hartford approved Plaintiff's leave for the dates she timely requested that were supported by proper medical certification. (UF 99.) Accordingly, Alaska satisfied the interactive process requirement in 2024 when it identified "a reasonable accommodation that" enabled Plaintiff to "perform [her] job effectively." *Wilson*, 169 Cal. App. 4th at 1195.

## VIII. PLAINTIFF'S SEVENTH AND EIGHTH CAUSES OF ACTION FOR DISCRIMINATION AND RETALIATION UNDER THE FMLA AND CFRA FAIL

To establish a claim for retaliation or discrimination under CFRA, Plaintiff must show that: (1) Alaska was an employer covered by CFRA; (2) Plaintiff was an employee eligible to take CFRA leave; (3) Plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) Plaintiff suffered an adverse employment action because of her exercise of her right to CFRA leave. *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 248 (2016). The *McDonnell Douglas* analysis applies to retaliation claims under the CFRA. *Id.*

Here, Plaintiff errs in claiming that Alaska improperly assessed attendance points on three separate occasions while she was on approved FMLA/CFRA leave, and that she was terminated for exercising FMLA/CFRA leave. (Compl. ¶¶ 26; 82.)

23

**A.    Plaintiff cannot prove that any attendance points Alaska issued in 2022 or 2023 were because she exercised her right to CFRA or FMLA leave.**

After her knee injury in May 2022, Plaintiff did not seek FMLA or CFRA leave for absences that year. (UF 35-36.) Thus, when Plaintiff was absent from August 20 to August 24, 2022 to care for her knee, Alaska properly categorized the absences as "sick leave" and assessed 2.5 attendance points. (*Id.*) Hence, Plaintiff cannot claim that those points were assessed in retaliation for exercising her right to FMLA or CFRA leave. In fact, the record is clear that Alaska did not discipline or counsel Plaintiff for the points she accrued in August 2022, which were promptly removed from her attendance record after Plaintiff submitted a Point Reduction Form to remove those points. (UF 37-39.)

Further, in 2023, Plaintiff was not approved for any FMLA or CFRA leave until August 12, which ran only through September 13. (UF 130.) Thus, Plaintiff cannot claim that any points assessed in 2023 before August 12 were in retaliation for taking FMLA or CFRA leave. Moreover, Plaintiff has no evidence that Alaska issued any attendance points in 2023 during the short period she was eligible for FMLA and CFRA leave.

**B.    Plaintiff was not eligible for CFRA or FMLA leaves in 2024 for absences in July or August when she called off work on August 14.**

On the morning of August 19, 2024, Nolen counseled Plaintiff after she accumulated 5.0 attendance points for five absences in July and calling out of her Reserve assignment on August 14, 2024. (UF 100-101.) While Plaintiff requested intermittent leave benefits on July 7, 2024, The Hartford did not approve her leave request until August 19, 2024—five days *after* her call out. (UF 99.)

Thus, Plaintiff has no evidence that Alaska issued attendance points or counseled Plaintiff for exercising her right to CFRA or FMLA leave because (i) The Hartford had not approved her leave request when Alaska issued attendance points for absences in July and August 2024, (ii) The Hartford had not yet approved Plaintiff's leave request the morning of August 19, 2024 when Nolen counseled Plaintiff for attendance issues, and (iii) Alaska removed those attendance points (that Plaintiff properly requested) after

24

learning that The Hartford had approved her intermittent leave request beginning July 8, 2024. (UF 68-73, 100-103.)

## C. Plaintiff cannot prove pretext because Alaska accurately assessed points and terminated her for lawful reasons.

Plaintiff was terminated for sick leave abuse, which violated several Alaska policies. (UF 111.) Plaintiff has produced no evidence indicating otherwise. As set forth above, Plaintiff cannot establish that Alaska issued attendance points to discriminate or retaliate against her for exercising her right to take FMLA or CFRA leave. Accordingly, Plaintiff's seventh and eighth causes of action fail.

## IX. PLAINTIFF'S FIFTH AND ELEVENTH CAUSES OF ACTION FOR FAILURE TO PREVENT AND WRONGFUL TERMINATION FAIL

Plaintiff's fifth claim for failure to prevent discrimination and harassment fails because it rises and falls with the underlying FEHA claims. *See Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1021 (2009) ("An actionable claim [for failure to prevent discrimination] is dependent on a claim of actual discrimination").

Plaintiff's eleventh claim for wrongful termination claim also fails for the same reason. *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999) ("because [the plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails.").

## X. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS

Plaintiff's claim for punitive damages fails because there is no "clear and convincing evidence" that Alaska was "guilty of oppression, fraud or malice." *Aquino v. Superior Ct.*, 21 Cal. App. 4th 847, 857 (1993); Civ. Code § 3294(a).

Nor is there evidence that "an officer, director, or managing agent" of Alaska authorized, ratified, or engaged in oppressive, fraudulent, or malicious conduct, as required under Civil Code Section § 3294(b). Plaintiff has produced no evidence that any of the alleged bad actors here hold such position. Thus, Plaintiff's claim will fail.

25

## XI.    CONCLUSION

For the foregoing reasons, Alaska respectfully requests that the Court grant its motion for summary judgment in its entirety. Alternatively, Alaska requests that the Court grant partial summary judgment as to each of Plaintiff's claims.

DATED:  July 6, 2026                    Respectfully submitted,

SEYFARTH SHAW LLP

By:

Heriberto Alvarez, Jr.
Julia S. Gordon

Attorneys for Defendant
ALASKA AIRLINES, INC.

**Local Rule 11-6.2 Certification.**

The undersigned, counsel of record for Alaska, certifies that this brief contains 6,711 words, which complies with the word limit of L.R. 11-6.1.

By:

Heriberto Alvarez, Jr.

326931323v.4

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT